We'll hear argument now in the case of Miles v. Anton. Mr. Davie. Thank you. May it please the Court. The District Court dismissed Mr. Miles' complaint because of lack of exhaustion, even though the Indiana Department of Corrections policy specified that his issue was not appropriate, a matter inappropriate to the grievance process and therefore non-grievable. Because the law only requires exhaustion of available remedies, that dismissal was wrong as a matter of law. In the event that this Court disagrees with me, fact issues still preclude summary judgment in this case because the State did not carry its burden to show beyond dispute that remedies were available. And in the absolute worst-case scenario for my client, those fact disputes should have been explored at a PAVI hearing, which is required in situations where facts relating to exhaustion are in dispute. I'm sorry. I was going to ask you whether the points you're making apply with equal force to Mr. Miles' free exercise claim and his retaliation claim. I can imagine complaining that you've lost your job, which puts you in a different track under the Indiana procedures. And the reason you lost your job was retaliation for trying to assert your free exercise right. So I can see the link there. But your opponents make the argument that at least the first of those things doesn't have anything to do with his job. It's the dignitary interest that one suffers from not being able to practice one's religion. So I just wonder whether they go along with the same analysis. I think the analysis is exactly the same because the entire thing happened in the context of this job. And if you look at the text of the grievance policy itself, the grievance policy actually doesn't specify anything about a religion, a free exercise, anything like that. If you're a reasonable incarcerated person looking at this policy and you see that a matter inappropriate to the grievance process includes the loss of a job and on top of that here, recall that there was also pretextual discipline at issue. So he lost his job and received pretextual discipline. The policy sets out different processes for that. Appeals processes in the classification process for the loss of a job and a disciplinary appeals process for the disciplinary thing. He did both of those things. And so if you look at the entire, like the nexus of everything that happened here was her treatment of him in the context of his job. All of it was job related. And so if you're, again, a reasonable prisoner looking at this policy, you would say, okay, this is inappropriate to the grievance process. I'm going to do a classification appeal. I'm going to do a disciplinary appeal, which is what he did. Are you using the words grievance? I mean, I'm interested because, of course, the statute requires exhaustion. The statute, as far as I know, doesn't care what the state prison wants to call the internal avenues that it makes available to prisoners, whether it calls one thing a grievance process and another thing disciplinary appeals or another thing something else. So your argument basically is that the exhaustion command of the statute was satisfied here by the procedures he did go through? So that's actually sort of my backup argument. I'm making two arguments. The first is that to the extent that the state is saying that he should have gone through this formal grievance process, he didn't have to because they didn't make that available. Because of the wording of the policy. Exactly. Under the text of the policy, that process was not available. To the extent that you do have to use the processes that are available, he did that. He did the classification appeal, he did the disciplinary appeal, and he won them both. And so regardless of how you look at this, whether you say, oh, you know, he has to do a formal grievance, he doesn't have to do that because that's not available. He does have to follow the policy. He did that. And so under any sort of look of what the statute required of him, he did all of those things. And I think, Mr. David, what factual issues would be explored at a PAVI hearing? Obviously there would be memorialization with regard to credibility possibly, but you've outlined a series of kind of rhetorical questions, both in the blue brief and the gray brief. What are the factual issues that need to be resolved at a PAVI hearing? So I'll answer that in two ways. The first is that I want to be very clear. I think we should win as a matter of law. I actually don't think we need one. To the extent that you do think that we might have one, because you don't think the policy is clear, I think there are a few things that we would look at. One of them, we talk about how the officers here, including Officer Nunn, the lieutenants, all of the people that shepherded him through these alternative processes. This court's procedures are very clear, and this is cases like Thomas and Davis, that if officers lead you through a different process, the prison can't then go back and say, oh, you had to do this other thing. You were misled. And Ross itself talks about that. And so exactly how those officers shepherded him through those processes, how they instructed him, if they instructed him to do the things that he did, that would be the kind of thing, the testimony at a PAVI hearing. Are those arguments forfeited, though? I don't believe so, Your Honor. And I think, you know, I know my colleague brought up waiver of certain arguments. I would urge the court to consider that Mr. Miles was pro se below. I obviously took this case on for the appeal in the first instance. And, you know, the CABA decision and all kinds of other decisions talk about, you know, when it's a pro se incarcerated plaintiff construing pleadings liberally, giving him sort of consideration. And if you look at his arguments, he sort of makes all these arguments. You know, he said on page 25 of the appendix that fact disputes preclude summary judgment. And I think that that probably is enough to say, oh, a PAVI hearing is required. When there are fact disputes about exhaustion, a PAVI hearing is required, as this court has said in, you know, Ramirez and Roberts and all kinds of other cases. But we've got to dig down a little bit as to what those fact disputes are. Now, you've mentioned with regard to the officers shepherding him through, other potential fact disputes that you think should be resolved at a PAVI. Yes, certainly. My colleague brought up, I mean, raised facts that were not in the record in the red brief, right, including presuming things about asking this court to construe facts against him that aren't even in the record at all, including that he attended an orientation, what the content of that orientation was, how a reasonable sort of prisoner would have understood the policy to operate. And so, again, I think if you look at the nested burdens here, right, which is that on the summary judgment posture, all the facts have to be construed in favor of Mr. Miles. And then, substantively, exhaustion is an affirmative defense. The state must show beyond dispute that remedies were available. I think given the sort of factual predicate that my colleague is urging this court to take into account to do that, I think there has to at least be a PAVI hearing. And, again, that's, to be very clear, only true to the extent that this court doesn't believe that the policy, as a matter of law, made his issue non-grievable and, therefore, you know, he doesn't have to engage in that process at all because it's not available. I do see that I'm getting close to the amount of time that I want to reserve for rebuttal. If you have no other questions, I'll see you then. Thank you, Mr. Davey. Ms. Rucker. Thank you. May it please the court. This court should affirm the district court's grant of summary judgment because the undisputed facts show that Miles failed to exhaust his administrative remedies. The focus of Miles' complaint is on Ms. Anton's individual actions, violating his First Amendment rights by substantially burdening his free exercise of religion and by retaliating against him. These are precisely the claims that are meant to be raised in the offender grievance process. But the evidence is undisputed that Miles failed to submit a formal… I want to bring up an issue that was raised in an earlier case. The reason why somebody has done something is different from a claim, right? The claim is, I lost my job improperly. And then the theory about why that's a good claim is that this was a response for exercising a particular right. But you want to merge the two and say, well, you can file a grievance about a loss of your job if, in fact, you've got a good theory. But you can't file a grievance about a loss of a job if you don't have a good theory. And that's… isn't that very hard? You end up making whether something is subject to a grievance depend on whether you've got a good grievance or a bad one. Your Honor, I don't believe that that's my argument at all. The grievance policy says that classification actions and decisions aren't grievable. It doesn't say that… No, no, no. It's not that simple. It says classifications in comma including loss of job. So it defines loss of job as a classification action that one can't file a grievance about. Right? That's what it says. Yes, it says classification decisions or actions including the loss of your job. But it doesn't say that you can't challenge under the grievance process anything relating to the job loss. But he did lose the job. That's why I asked the first question I did. He asserts that the reason he lost the job is because he was trying to go to these religious services. And so that's an impermissible reason, he thinks. That's the merits of whether the job loss was there. Your Honor, you're relying on this language of a sort of more global nature that actions of individual guards and officers goes under the grievance policy. But, of course, everything that happens at the prison is done by a person ultimately. And there's a particular system here for loss of job. Why doesn't that particular system govern? That's because the only thing that's appealable under the classification policy is the classification specialist's actual determination that— Including loss of job? Which include loss of a job. That's what it says. I mean, it sounds like a trap for the unworthy. The department— It sounds like a rule designed to ensnare any prisoner who has read textualist literature and thinks that you ought to interpret the words to mean what the words say rather than what the speaker might have subjectively intended. I don't think so, Your Honor. At the prisoner orientation, which Miles never disputed below that he attended— But this is 12 v. 6. I mean, this is, you know, like throwing you out at the outset. What about your opponent's comment that the record doesn't include details of what happened at the orientation? The record says that all prisoners attend prison orientation, and during the orientation, they're informed of the policy as well as the policies retained in the— Where is that in the record? Where is that? What hearing—was there a PAVI? There wasn't a PAVI hearing. There's a declaration, Your Honor, from the grievance specialist. Right. So, I mean, it sounds like you're having half a hearing, which doesn't seem too fair. He was never given the chance to respond. Your Honor, this is on—it's a summary judgment motion, and so the state designated this as evidence in their motion for summary judgment, and he was given an opportunity to respond. He filed a response, and he didn't designate any evidence to show that he didn't attend a prisoner orientation, that he wasn't informed of the policy. In fact, he admits that he knew about the policy. But how is he supposed to weave his way through? You have this process for loss of a job, and he uses it. So, actually, I would say the intent of the statute, that prisons be given a chance to resolve these problems at the administrative level, at the prison level, where the experts and correctional measures exist, that's all happened here. You know, he goes through all sorts of prison procedures. He just doesn't go through the procedure that you want him to have gone through. But how do we know, at the orientation session, that the distinction you're talking about between the grievance procedure and the disciplinary procedure and the classification procedure were all spelled out? The declaration just says that they were informed of the policies. Which doesn't tell me anything in answer to the question I'm asking. I think that the—I think the plain language of the policy speaks for itself. I think that offenders know that the grievance process— the classification process is used for appealing just the classification decision. The disciplinary process is used for appealing just the disciplinary decision. And the grievance process is used for everything else. And offenders are aware of this. I mean, they live this every day. I mean, pretty much every claim is brought under the offender grievance process, unless it is an actual classification action made by the classification specialist or a disciplinary decision. But it read the words loss of a job out of the text. Yep. You want us to stop after classification actions or decisions, period. But the actual thing says comma, which includes loss of a job. Your Honor, I don't want you to read it out of the text of the policy. I want you to read them together. It's classification actions, and a classification action includes the loss of the job. But it doesn't mean that anything related to the loss of the job can't be grieved. It's not anything related to. If you've lost your job, which he did, it's not a bad performance review. It's, you know, he lost his job. That's correct. And he thinks he shouldn't have. That's correct that he lost his job, but that would have been the classification decision, not Ms. Anton's decision. I mean, these were events that occurred before the loss of the job. And so there's two separate things. Also, I want to point out something that opposing counsel said. I hate to ask for more legalism, but is there a definitional clause in this prison regulation that defines these words in particular ways? I don't believe that the grievance policy specifically defines classification action other than including the language in the parentheses. I will point you to the policy later on that provides an example of this. The policy also says that disciplinary decisions can't be appealed through the grievance process. And later on in the policy, it explains that. It explains that if an offender is challenging something, say, prior to a discipline action, he was maybe battered by an officer. He can't challenge that battery under the disciplinary appeal. However, he has to challenge it through the grievance process. And so it's similar here in a classification action. He can't challenge Ms. Anton's retaliation or her burdening his free exercise of religion in the classification appeal. But he has to instead file a grievance. And so oftentimes, offenders must follow more than one path. And the reason that they do this is this is how the department separates its employees. There are employees who specialize in grievance. There are employees who specialize in classification. And the whole purpose of this is to ensure that things aren't missed. And so that's why the department requires offenders to follow these paths in order to exhaust. And I will point out that, as you know, exhaustion requires offenders to follow the path set forth by the department. And here, the department's department's... If they're decipherable, I'll say. Well, Your Honor, the policy is pretty clear that it says actions of individual staff. And I'll go back to your earlier question about... That's every action. You can throw the other policy away if that really means literally what you say. I disagree. Individual staff have done everything. I disagree because an offender could not actually appeal the classification supervisor or specialist's decision terminating him from his job in the offender or in the grievance process. And that's still an action of individual staff. So I don't agree that it would apply to everything. And as to the payee hearing, the state doesn't believe a payee hearing is necessary. There are no genuine issues of material fact. His claim about the officers was never raised below. And also, there's no evidence or even assertion below that he asked these officers about which process he should follow or that they were aware. And as I said, oftentimes, prisoners must follow more than one path. So even if they knew he had followed the classification process, they were under no obligation to inform him of the grievance process, especially where there's no evidence that he asked. So I see my time is up. There are no more questions. The state asks that this court affirm. Thank you, Ms. Reker. Anything further, Mr. Davey? Yes, Your Honor. I just want to say a couple of things. The first is I think as all of this illustrated, what my colleague is actually asking for here is for the general language to control over the specific language. And as many of this court's cases have said in virtually every context in which the court interprets text, the specific controls over the general. And here, that is the loss of a job and disciplinary action, which controls over— Does the law library at this prison have a copy of Scalia and Garner on reading law that might contain that adage? I'm not sure, Your Honor, although that would be the kind of thing that could come up at a payee hearing. I would look forward to the case where the prisoner's argument is, I was entrapped by reading Scalia and Garner's rules of interpretation. Yeah, I'm not sure whether this is that case. But regardless, the specific controls over the general, the loss of a job, and disciplinary action, both things here that were inappropriate to the grievance process. And so it's not a matter of needing to do both things. It's inappropriate to it. He should win as a matter of law. And again, my only other point was that my colleague asked for, even just in that argument, a bunch of fact inferences to be construed against Mr. Miles. That's inappropriate as well. And unless you have any other questions, I'm happy to rest. Mr. Davy, Ms. Drecker makes the argument with regard to multiple paths that have to be explored. And the presumption is going to be that if that offender has got a grievance, that if they're just not sure, they should do it in both places. What would Mr. Miles' response be to that? So it is true that under some circumstances a Department of Corrections can require multiple paths. It's just that in this case they didn't. They said that the loss of a job was inappropriate to the grievance process and required a classification appeal, which is what he did. And so I think that it's, I mean, the idea that you would presume that you would have to go through two paths explicitly against the text of the policy, I just don't think you would assume that. If it sets out a path for you and you go through that path and no one else does anything, I don't think that you would assume that you would need to do a second thing. Mr. Miles isn't seeking reinstatement to that position, correct? So I think this is the kind of thing where, you know, if I were representing him below, I would probably file an amended complaint that clarified all of that. I do know that he liked that job and wanted it. But it's not clear to me that he necessarily could get that specific job back at the moment. Well, his prayer for relief doesn't request reinstatement to that position. Yes, correct. Thank you. Thank you. Thank you very much, counsel. The case is taken under advisement.